# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 25-1387V**

|  |  |
|---|---|
| ANGETTA MICHELLE PETIT, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: May 28, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Jeffrey S. Pop, Jeffrey S. Pop & Associates, Beverly Hills, CA, for Petitioner.*

*Ryan Pohlman Miller, U.S. Department of Justice, Washington, DC, for Respondent.*

**FINDINGS OF FACT**[1]

On August 20, 2025, Angetta Michelle Petit filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on October 22, 2024. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

Respondent has filed his Rule 4(c) Report setting forth several objections (ECF No. 14). For the reasons set forth below, I find that the record preponderantly supports a

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

finding that the vaccine was likely administered in Petitioner's left shoulder; that her shoulder pain likely began within 48 hours of vaccination; that her symptoms likely were limited to the shoulder in which she received the vaccine; and that her prior left shoulder condition and/or cervicalgia are not conditions that would explain her post-vaccination symptoms.

## I.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II.    Respondent's Position

Respondent asserts that Petitioner has not established that she received the vaccine in her left arm. Respondent's Rule 4(c) Report, ECF No.14, at *9-11. Respondent further argues that Petitioner has not preponderantly established that any of the SIRVA QAI are met. *Id*. at *11-14. Specifically, he contends that Petitioner has not established that (1) the onset of her pain occurred within the time required for a Table SIRVA, (2) her pre-vaccination left shoulder condition would not explain her post-vaccination symptoms, (3) her symptoms were limited to the shoulder in which she received the vaccine, and (4) no other condition or abnormality is present that would explain her symptoms, citing her pre-vaccination shoulder condition and cervicalgia. *Id*.

## III.    Findings of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent's Rule 4(c) report, and additional evidence filed. Specifically, I highlight the following evidence:

*Pre-vaccination records*

- In late 2021 (approximately three years before the vaccination at issue in this case), Petitioner injured her left shoulder. She saw an orthopedist in November 2021, and treated her left shoulder with physical therapy ("PT") until March of 2022. Ex. 13 at 91, 368-401.

- In 2023, Petitioner sought care for *right* shoulder pain. Ex. 8 at 65; Ex. 13 at 58. During a primary care appointment on May 9, 2023 for right shoulder pain and

other conditions, Petitioner was referred to PT.[3] *Id*. at 58, 61. At an orthopedist appointment for her right shoulder on September 1, 2023 – over a year before the subject vaccination – Petitioner discussed her left shoulder, explaining that she continued to experience "intermittent discomfort" in her left shoulder, and continued to do home exercises. Ex. 13 at 145. Additional PT was ordered for her *right* shoulder, but no treatment was provided for her *left* shoulder at this time. *Id*. at 145-47.

*Vaccination and subsequent records and other evidence*

- Petitioner received a flu vaccine at a CVS pharmacy on October 22, 2024. Ex. 2 at 9, 12. Although the vaccination record documents that the vaccine was administered in her *right* deltoid (*Id*.), Petitioner asserts that this is incorrect and it was administered in her *left* deltoid.

- Nine days later (October 31, 2024), Petitioner saw nurse practitioner ("NP") Gerald Durivage for left shoulder pain, also noted as an "injection site reaction" following vaccination. Ex. 3 at 2. On examination, NP Durivage noted that Petitioner exhibited tenderness in her *left* shoulder. *Id*. at 2-3. He assessed her with irritation of the injection site and acute pain of the left shoulder, and ordered a left shoulder ultrasound. *Id*. at 6.

- A month after vaccination (November 22, 2024), Petitioner saw Letitia Price, M.D., for left arm pain that "[s]tarted after a vaccine administration 10/22." Ex. 5 at 29. She reported a history of rotator cuff tendinopathy which she had treated in 2021 and had healed, with "[n]o pain until now." *Id*. Dr. Price reviewed a left shoulder MRI, which showed mild bursitis, and assessed Petitioner with acute bursitis of the left shoulder. *Id*. at 26-29. Petitioner was given oral steroids. *Id*.

- On December 9, 2024, Petitioner saw orthopedist Andrew Frederic Kuntz, M.D., for left shoulder pain. Ex. 7 at 64. Petitioner reported that she had received a vaccine on October 22nd, and her "arm has been painful since." *Id*. Petitioner noted her prior left shoulder injury, which had "resolved with PT" and she had "[n]o issues until her flu vaccine in October." *Id*. Dr. Kuntz assessed her with left shoulder subacromial bursitis, which he noted "can occur after vaccination," and tendinopathy of the left rotator cuff, and referred her for PT. *Id* . at 69.

---

[3] The primary care record states that Petitioner was referred to PT for a labral tear of her *left* shoulder, but the PT order states she was referred for *right* shoulder and neck pain. Ex. 8 at 34-35; Ex. 13 at 61. The subsequent PT records list treatment diagnoses of pain in her *right* shoulder and cervicalgia, and document treatment of her right shoulder but not her left. Ex. 8 at 9-65.

4

- Petitioner underwent a PT evaluation on December 13, 2024. Ex. 8 at 300. She reported left shoulder pain after vaccination that was "immediate" and "never went away". *Id*. Petitioner elaborated that she went to CVS for a flu vaccine, and "[t]he pharmacist injected the vaccine into my left arm." *Id*. She experienced immediate pain, which increased in intensity thereafter. *Id*. The "Patient Self-Report" section of the PT record adds that she reported "[n]umbness and tingling that travels down to C6-T1 route to 3-5 digits." *Id*. The therapist noted that Petitioner exhibited limited range of motion and strength, and "high pain levels" ranging from five to ten out of ten. *Id*. at 301-02.

- The "Patient Self-Report" section of three subsequent PT visits includes identical language of "[n]umbness and tingling that travels down to C6-T1 route to 3-5 digits," without further explanation. Ex. 8 at 266-82. The "Patient Self-Report" section of each later PT visit is identical to the initial evaluation, other than the first paragraph, which appears to have been updated at each appointment. *Id*. at 266, 269, 277.

- Petitioner filed a declaration in support of her claim. Ex. 1. Petitioner states that she injured her left shoulder in autumn of 2021 (three years prior to vaccination), and "[b]y May 2023, my left shoulder pain had overall resolved, and I was noted to have good strength and range of motion." *Id*. at ¶ 7. Her last visit to a medical provider about this was on September 1, 2023, and her "left shoulder injury resolved." *Id*.

- Petitioner states she received the at-issue vaccine in her left shoulder, which is her usual practice because she is right-hand dominant. Ex. 1 at ¶¶ 9, 10. Prior to vaccination, she had normal use of her left shoulder. *Id*. at ¶ 16. However, immediately after vaccination, she felt "a stabbing and sharp pain at the site of injection which progressively got worse." *Id*. at ¶ 17. She expected it to resolve on its own, but instead she developed limited range of motion and decreased strength, leading her to seek treatment. *Id*.

- At her first treatment appointment on October 31, 2024, an ultrasound was ordered. Ex. 1 at ¶ 20. Petitioner attempted to schedule it, but was told there was an eight-month delay for an ultrasound. *Id*. at ¶ 21. As a result, the test was not done, and she had x-rays and an MRI. *Id*. at ¶¶ 21-23.

These medical records and testimonial evidence, reviewed in their totality, establish that the flu vaccine was likely administered in Petitioner's left shoulder, as alleged, and that her shoulder pain more likely than not began within 48 hours of vaccination. Petitioner sought care for her left shoulder pain that she related to vaccination just *nine* days after administration of the vaccine. Ex. 3 at 2. When seeking

care, she consistently attributed her pain to vaccination. *Id*.; Ex. 8 at 266, 300. When she sought PT, she stated that the vaccine was administered in her left shoulder and related her left shoulder pain to vaccination, explaining that her pain began "shortly thereafter." Ex. 5 at 12. And Petitioner provided testimonial evidence that she experienced "a stabbing and sharp pain" immediately after vaccination. Ex. 1 at ¶ 17.

Additionally, the record establishes that, more likely than not, Petitioner's shoulder pain was limited to the shoulder in which she likely received the vaccine. I have previously found that references to symptoms originating in a claimant's shoulder and resulting in incidental symptoms elsewhere do not necessarily prevent a claimant from meeting the third SIRVA QAI. *See Valdez v. Sec'y of Health & Human Servs*., No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily* experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs*., No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original). In this case, the records refer to pain originating in Petitioner's shoulder resulting in incidental symptoms in her fingers. The record establishes that Petitioner has preponderantly satisfied this requirement.

Finally, I find that Petitioner's history of left shoulder pain does not represent a prior history of pain that would explain her post-vaccination symptoms, and is not another condition that would explain her symptoms. Even though Petitioner had a history left shoulder pain, that pain had been last treated two and a half years prior to the subject vaccination, and thus too long before to link to her pain following the vaccination at issue.

I acknowledge that Petitioner discussed her left shoulder condition with doctors twice in 2023 – still over a year before vaccination – in the context of seeking treatment for her *right* shoulder pain. Importantly, however, she did not seek or receive treatment for her left shoulder at either of the 2023 appointments. She mentioned intermittent discomfort in her left shoulder, and that she continued to do home exercises, but nothing more. That she did not seek or receive treatment at these appointments supports her contention that her left shoulder condition had abated by this time. This is further supported by her statements to two of her treating physicians that she had previously experienced a left shoulder injury that had been treated and that her left shoulder had been fine *until after vaccination*. Ex. 5 at 29; Ex. 7 at 64. Following vaccination, Petitioner reported immediate left shoulder pain. It is more likely that Petitioner's post-vaccination pain resulted from a vaccine-related injury than from a prior, dormant shoulder condition. Thus, the record preponderantly supports a finding that Petitioner's prior left shoulder condition would not explain her post-vaccination symptoms.

Respondent also suggests that Petitioner's cervicalgia[4] is another condition that would explain her post-vaccination symptoms, although this argument is not clear or well-developed. Respondent emphasizes that "her cervicalgia was tied to her right shoulder pain" – which weighs *against* her cervicalgia explaining her post-vaccination *left* shoulder symptoms. As such, it appears more likely than not that Petitioner's cervicalgia would not explain her post-vaccination left shoulder pain.

Given the above, Petitioner is encouraged to promptly engage Respondent in settlement discussions. If efforts to resolve the matter are unsuccessful, further proceedings will be ordered as appropriate (including potential transfer of the matter out of SPU).

## Scheduling Order

- **Petitioner shall file, by no later than <u>Wednesday, July 15, 2026</u>, a status report providing an update on the parties' discussions, including whether and when Petitioner has served a demand and whether any updated medical records are outstanding, along with any additional evidence Petitioner wishes to file.**

- **Respondent shall file, by no later than <u>Wednesday, July 15, 2026</u>, a status report indicating whether he is willing to engage in tentative discussions regarding settlement or proffer, or remains opposed to negotiating at this time; and proposing a date for filing an amended Rule 4(c) Report if he wishes to file one.**

IT IS SO ORDERED.

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[4] Cervicalgia is another term for neck pain. Cleveland Clinic *Neck Pain*, https://my.clevelandclinic.org/health/symptoms/21179-neck-pain (last visited May 28, 2026).